Jesse J. Maddox, Bar No. 219091
jmaddox@lcwlegal.com
Michael D. Youril, Bar No. 285591
myouril@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704
Telephone:    559.256.7800
Facsimile:    559.449.4535

David E. Mastagni, SBN 204244
davidm@mastagni.com
Isaac S. Stevens, SBD 251245
istevens@mastagni.com
MASTAGNI HOLSTEDT
A Professional Corporation
1912 "I" Street
Sacramento, California 95811
Telephone: (916) 446-4692
Facsimile: (916) 447-4614

Attorneys for Plaintiffs

Attorneys for Defendant CITY OF MERCED

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD ENGLERT, RICHARD RAMIREZ, MATTHEW VAN HAGEN, RYAN PASKIN, and CASEY WILSON on behalf of themselves and all similarly situated individuals,<br><br>             Plaintiffs,<br><br>  v.<br><br>CITY OF MERCED,<br><br>             Defendant. | Case No.:  1:18-cv-01239 NONE-SAB<br><br>**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**<br><br>Date:       May 5, 2020<br>Time:      8:30 a.m.<br>Courtroom: 4 |

1

Joint Motion for Approval of Settlement Agreement

9212083.1 ME015-027

## I. INTRODUCTION

Plaintiffs Chad Englert, et al. ("Plaintiffs") and Defendant City of Merced ("Defendant" or "City") (collectively the "Parties") respectfully move this Court to approve their conditional Settlement Agreement and dismiss this case with prejudice. As discussed more fully below, the Parties' Settlement Agreement resolves a bona fide dispute between the Parties, provides for fair and reasonable compensation to each plaintiff based on the allegations set forth in the complaint and information discovered during discovery, and is fair and reasonable in terms of the attorneys' fees and costs sought by Plaintiffs' counsel in connection with pursuing this litigation. The Settlement Agreement, which is signed by all 53 Plaintiffs and Defendant, is submitted to this Court as Exhibit A to the Declaration of Michael Youril in support of Joint Motion for Approval of Settlement Agreement and Dismissal of Case ("Youril Dec."), ¶ 12.)

## II. STATEMENT OF RELEVANT FACTS

### A. BACKGROUND AND PROCEDURAL POSTURE

Plaintiff filed his Complaint on September 12, 2018, pursuant to the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. sections 201, *et seq.*, to recover unpaid overtime compensation, liquidated damages in an equal amount, and attorneys' fees and costs based on Defendant's alleged failure to include all statutorily required forms of compensation in the calculation of the "regular rate" of pay. (Dkt. No. 1.) Plaintiffs alleged Defendant excluded holiday-in-lieu ("HIL Compensation") from the "regular rate." (*Id.*) Under the memorandum of understanding between the City of Merced and the International Fire Fighters Association Local #1479 ("MOU"), firefighters receive 12 hours of straight-time pay for each of the 12 days designated as holidays under the MOU, including two floating holidays. (Youril Dec., ¶ 3.) Plaintiffs are non-exempt employees covered under the MOU. (Youril Dec., ¶ 3.) During the relevant statutory period, Plaintiffs have worked overtime as that term is defined under 29 U.S.C. section 207 of the FLSA, i.e. hours actually worked in a work period in excess of the applicable FLSA maximum hours threshold. (Dkt. No. 1.)

The City filed a motion to dismiss, which was denied by the Court on December 21,

2018.[1]  (Dkt. No. 18.)  On February 7, 2019, the City filed an Answer.  (Dkt. No. 22.)

As of December 31, 2018, the City began including holiday-in-lieu pay in the regular rate when the employee works on a holiday.  (Youril Dec., ¶ 4.)

In the middle of December 2019, the DOL issued its final rule, which went into effect on January 15, 2020.  (84 Fed. Reg. at 68,742; 29 C.F.R. 778.219.)  The final rule made changes to an interpretive bulletin related to holiday pay that is at issue in this case and made specific reference to the Court's decision to deny the City's motion to dismiss in *McKinnon*.  (*Id*.)

**B.     THE PARTIES' SETTLEMENT EFFORTS**

In recognition of the high costs of litigation, the Parties engaged in ongoing arms-length settlement negotiations throughout the pendency of this action.  As part of these efforts, the Parties exchanged significant amounts of payroll and timekeeping data and presented each other with relevant legal authority in support of their respective positions.  (Youril Dec., ¶¶ 5, 11.)  The Parties also exchanged a series of demands and offers.  (Youril Dec., ¶ 5.)  When the Parties were unable to reach agreement concerning a settlement, the Parties engaged the services of Steve Pearl to serve as a mediator.  (Youril Dec., ¶ 5.)  Mr. Pearl's relevant experience included FLSA collective action disputes.  (Youril Dec., ¶ 5.)  The Parties engaged in a full-day of mediation on February 3, 2020.[2]  (Youril Dec., ¶ 5.)  The mediation involved discussion of legal concepts and positions, as well as exchange of assessments of appropriate damages and fees.  (Youril Dec., ¶ 5.)  Although the Parties did not reach agreement at the mediation, with the assistance of the mediator, they reached agreement the following day.  (Youril Dec., ¶ 5.)  The Parties compromised and agreed in principle to the material terms of a settlement that would resolve and release all disputes and claims in the Action.

**C.     RELEVANT TERMS OF THE SETTLEMENT AGREEMENT**

The Parties memorialized their accord in a long-form Settlement Agreement.  As a result

---

[1] The City's motion to dismiss in *McKinnon v. City of Merced* (E.D. Cal., Dec. 17, 2018, No. 118CV01124LJOSAB) 2018 WL 6601900, a related case, was denied on December 17, 2018.  The *McKinnon* decision is incorporated by reference in the *Englert* decision.

[2] The mediation was a joint mediation that included representatives from the *McKinnon* matter.

9212083.1 ME015-027

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

of the efforts summarized above, the Parties agreed to settle this matter for a total sum of $350,000. This settlement amount includes all amounts to be paid by Defendant to Plaintiffs, attorneys' fees and costs inclusive, to resolve this matter. Key details of the settlement terms are as follows:

1. The City agreed to pay the individual Plaintiffs a total sum of $236,503.85. The individual allocations of the total sum were determined by Plaintiffs and based upon the number of statutory overtime hours worked over the three years prior to each Plaintiffs' opt-in date and the amount of holiday-in-lieu pay earned.

2. Plaintiffs agree to release all overtime claims against Defendant under any legal theory relating to or arising from this Action and agree to dismiss the lawsuit with prejudice and to effectuate dismissal of their pending overtime grievance with prejudice.

3. The City agreed to pay Plaintiffs' counsel $113,496.15 for Plaintiffs' reasonable attorneys' fees and costs. Plaintiffs are not responsible for any payment of attorneys' fees or costs from their individual settlement amounts.

(Youril Dec., ¶ 5; Mastagni Dec., ¶ 11)

Prior to executing the above-referenced release, each individual Plaintiff had a full and fair opportunity to consult with Plaintiffs' counsel. (Mastagni Dec., ¶ 12.) Every individual Plaintiff voluntarily agreed to accept the terms of the Settlement Agreement and executed separate "Settlement Agreement and Release" documents to that end. (Mastagni Dec., ¶ 12; Youril Dec., ¶ 13.) Exhibit B, attached to the Declaration of Michael Youril, provides the individual amount that each Plaintiff will receive under the Settlement Agreement. (Youril Dec., ¶ 13.)

### III. LEGAL STANDARD

Settlement of collective action claims under the FLSA requires court approval. (*Selk v. Pioneers Memorial Healthcare District*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016).) The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. (*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016).) However, in this circuit, district

4

courts have normally applied a widely-used standard adopted by the Eleventh Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide dispute.  (*Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk,* 159 F.Supp.3d at 1172.)  "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." (*Id.* [Internal quotation marks and citation omitted].)  A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute.  (*Id.*)

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions.  (*Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013).)  To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced factors such as:

> "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." (*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), order corrected, No. 2:09-CV-2214 KJM EFB, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015).)

With this approach, a "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA."  (*Id.*)  Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved to promote the efficiency of encouraging settlement of litigation.  (*McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).)

5

## IV. ARGUMENT

In order to approve the settlement in the instant case, the Court must find that (1) the case involves a bona fide dispute, (2) the proposed settlement agreement is fair and reasonable, and (3) the award of attorney's fees and costs are reasonable.

### A. BONA FIDE DISPUTE

The Court should approve the proposed Settlement Agreement because it resolves several bona fide disputes between the Parties regarding legitimate, legally unresolved questions over the existence and extent of Defendant's liability.  "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] . . . the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." (*Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014); *Lynn's Food Stores*, 679 F.2d at 1353 n.8 (requiring "settlement of a bona fide dispute between the Parties with respect to coverage or amount due under the [FLSA]").)  The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the Parties.  (*Ibid.*)

The treatment of holiday-in-lieu pay under the FLSA has not been addressed by the Ninth Circuit and is currently being, or has recently been, litigated in numerous California District courts.  (See *Aboudara, et al. v. City of Santa Rosa*, Case No. 4:14-cv-01661-HSG (N.D. Cal.); *Lewis, et al. v. County of Colusa*, Case No. 2:16-cv-01745-VC (E.D. Cal.); *Goddard, et al. v. City of Cathedral City*, Case No. 5:19-cv-00482-PSG-SHK (C.D. Cal.); *Burris v. City of Petaluma,* Case No. 4:18-cv-02102-HSG (N.D. Cal.).)

At the time the was lawsuit filed, the Parties disagreed about whether the FLSA, or district court cases, required inclusion of the holiday-in-lieu pay in the regular rate for the purposes of calculating overtime under the FLSA.  (See 29 U.S.C. § 207(e)(2); 29 C.F.R. § 778.219; *Hart v. City of Alameda* (N.D. Cal., June 17, 2009, No. C-07-5845MMC) 2009 WL 1705612; *Lewis v. County of Colusa* (E.D. Cal., Apr. 3, 2018, No. 2:16-CV-01745-VC) 2018 WL 1605754.)  The City's motion to dismiss was denied by the Court on December 21, 2018.  (Dkt. No. 18.)

In the middle of December 2019, the DOL issued its final rule, which went into effect on January 15, 2020. (84 Fed. Reg. at 68,742.) The final rule expresses the view that the current regulations support exclusion of holiday-in-lieu pay from the regular rate and explicitly disagrees with a portion of the analysis in *McKinnon*. (84 Fed. Reg. at 68,742 & n.75.) The final rule added a new example of holiday-in-lieu compensation that can be excluded from the regular rate and indicates the example is a clarification. (84 Fed. Reg. at 68,742.) Defendant contends the example added to the final rule under 29 C.F.R. section 778.219(a)(4) is applicable to the claims raised in this Action. Defendant further contends that if this Court or the Ninth Circuit Court of Appeals deferred to the new rule, Plaintiffs would recover no damages. Plaintiffs contend that in denying Defendant's motion to dismiss, Judge O'Neill issued a legal determination that holiday-in-lieu pay may not be excluded under 29 U.S.C. section 207(e)(2). Plaintiffs contend Judge O'Neill's ruling is subject to the law-of-the-case doctrine, and that the new rule should not be afforded deference under Plaintiffs' interpretation of *Kisor v. Wilkie* (2019) 139 S.Ct. 2400. Defendant contends that, even under Judge O'Neill's ruling, compensation only has to be included in the regular rate when the employee actually works the holiday. While Plaintiffs believe their holiday-in-lieu claims are meritorious, Defendant disagrees. In light of the final rule issued in January 2020, a bona fide dispute exists that could potentially eliminate any liability.

In addition to the bona fide dispute over what compensation must be included in the "regular rate," the Parties also disagree over the methodology utilized to calculate the "regular rate." Put simply, there are arguably multiple ways to calculate overtime compensation due under the FLSA, including but not limited to the salary method, the hourly method, and the fluctuating workweek method. Plaintiffs have asserted throughout this litigation that damages should be calculated based on the method for salaried, non-exempt employees prescribed in 29 C.F.R. section 778.113, which uses the regularly scheduled hours as the divisor to determine the "regular rate" before making the time and one-half calculation. (Mastagni Dec., ¶ 14.) However, the City has consistently maintained that Plaintiffs are hourly, non-exempt employees and that the proper method for calculating their overtime is the method set forth in 29 C.F.R. section 778.110(b) and other authorities that use the actual hours worked as the divisor. (Youril Dec., ¶ 7.) The Parties

7

1 also dispute the proper multiplier to apply to each overtime hour.  Whereas Defendant contends
2 the FLSA requires a .5 premium multiplier, Plaintiffs disagree.  (*Id.*)  The evidence is arguably
3 conflicting with regard to which method is appropriate.  The application of one calculation
4 method and/or one multiplier over another has a significant effect on the amount of overtime
5 owed.  As a practical matter, were the City to prevail on this issue, Plaintiffs' alleged damages
6 would be reduced by over 66%.  (Youril Dec., ¶¶ 7-8; Mastagni Dec., ¶ 14.)

       Moreover, the Parties dispute whether the Plaintiffs are entitled to liquidated damages.  29 U.S.C. section 216(b) provides that "an employer who violates the Act shall be liable for unpaid overtime compensation plus an additional equal amount as liquidated damages." (*Local 246 Util. Workers Union of Am. v. S. California Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996).)  However, liquidated damages may be avoided if the employer can establish "subjective and objective good faith in its violation of the FLSA."  (*Id.*)  Plaintiffs' contend Defendant knew or should have known of the alleged FLSA violations based upon the numerous California District Court rulings addressing the exclusion of holiday-in-lieu pay. (Mastagni Dec., ¶ 14.)   Defendant contends that the California District Court rulings are distinguishable and the lack of Ninth Circuit guidance regarding holiday-in-lieu pay compensation renders Plaintiffs' recovery of liquidated damages uncertain.  (Youril Dec., ¶ 8.) In addition, Defendant contends its exclusion of holiday-in-lieu pay was consistent with a 2006 DOL Opinion Letter.  (U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 2006 WL 4512960 (July 24, 2006).)  Therefore, Defendant's liability for liquidated damages is disputed.  (*Id.*; Youril Dec., ¶¶ 8-9.)  If liquidated damages were denied, Plaintiffs' range of recovery would be reduced by 50%.

       Finally, there is a dispute as to the applicable statute of limitations.  Generally, the FLSA has a two-year statute of limitations.  (29 U.S.C. § 255(a).)  However, if the violation of the FLSA is willful, the statute of limitations extends to three years.  (*Id.*)  The burden is on the employee(s) to show a willful violation.  The issue of willfulness involves a similar inquiry as good faith.  "An employer's violation of the FLSA is "willful" when it is "on notice of its FLSA requirements, yet [takes] no affirmative action to assure compliance with them. [Citations omitted.]" (*Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016).)  Similar to the analysis

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

8

of the City's "good faith" defense, because the Ninth Circuit has not directly addressed holiday-in-lieu pay, and due to some favorable DOL guidance, the City believes its legal obligation to include such remuneration in the "regular rate" was not clear.  (See *Callahan v. City of Sanger*, No. 14-cv-600-BAM, 2015 WL 2455419, at *13-14 (E.D. Cal. May 22, 2015).)  Given these facts, Plaintiffs' likelihood of prevailing on their willfulness claims and extending the recovery period by an additional year is uncertain.  (Youril Dec., ¶¶ 8-9; Mastagni Dec., ¶ 14.) .)  Thus, the City's defense to liability for willfulness is disputed.

The above disputes likely would not be resolved for years, given that either party likely would appeal an adverse ruling on this issue to the Ninth Circuit, and perhaps beyond.  (Youril Dec., ¶ 8; Mastagni Dec., ¶ 14-16.)

Based on the foregoing, the Parties submit that the Settlement Agreement resolved several bona fide disputes between the Parties that all necessarily affected the existence and extent of Defendant's liability.

### B. THE PROPOSED SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION OF PLAINTIFFS' CLAIMS

To determine whether a FLSA settlement is fair and reasonable, courts evaluate the "totality of the circumstances" within the context of the purposes of the FLSA.  (*Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017).)  Courts in the Ninth Circuit have considered the following factors when determining whether a settlement is fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.  (*See Selk*, 159 F.Supp.3d at 1173; *Slezak*, 2017 WL 2688224, at *3.)

#### 1. Plaintiffs' Range of Possible Recovery

Under the FLSA, the maximum amount a plaintiff can recover is twice the amount of underpaid wages for the three-year period prior to opting into the lawsuit (i.e., an award of liquidated damages coupled with a finding the violation was willful).

Under the terms of the Settlement Agreement, Defendant will pay Plaintiffs a total sum of $236,503.85, exclusive of attorneys' fees and costs, which is near the maximum range for Plaintiffs' recovery at trial. (Mastagni Dec., ¶ 18; Youril Dec., ¶ 10.) To determine each Plaintiff's damages, Plaintiffs' counsel identified the amount each Plaintiff's "regular rate" was under calculated based on Defendant's exclusion of the holiday-in-lieu pay. (Mastagni Dec., ¶ 17.) Then, using the methodology outlined in 29 C.F.R. section 778.113, Plaintiffs' counsel determined the resulting underpayment over the previous three years. (Mastagni Dec., ¶ 17.)

During a portion of the recovery period, Plaintiffs' labor contracts treated most paid time off as "hours worked" for purposes of determining overtime compensation. In order to avoid the substantial expense of converting payroll records reflecting MOU-defined overtime to FLSA overtime calculations, Plaintiffs use the MOU-defined overtime hours in its calculations. The use of MOU-defined overtime hours, for even a portion of the recovery period, increased Plaintiffs' damages calculations. Plaintiffs' damages calculations did not apply offsets and credits Defendant would otherwise be legally entitled to under 29 U.S.C. section 207(h)(2) for payment of non-FLSA overtime (i.e., MOU overtime). (Mastagni Dec., ¶17.) Not applying statutory offsets and credits provided greater damages calculations for Plaintiffs as compared to that which is recoverable under the FLSA.

If the City ultimately prevailed on the threshold issue of whether holiday-in-lieu pay may be excluded from the regular rate of pay, Plaintiffs would recover nothing. The City conducted its own internal calculations of the potential liability, if any, and estimated that Plaintiffs would only have been entitled to roughly $68,060 using the City's calculation method. (Youril Dec, ¶ 10.) This figure included unpaid wages and liquidated damages over a three-year statute of limitations period. (*Id*.) It also was calculated using a higher base wage than was in effect for most of the alleged liability period. (*Id*.)

Further, even if the Court found that holiday-in-lieu pay must be included in the regular rate, the Court could find that Defendant's alleged violation was not willful, thus only a two-year statute of limitations would apply. Moreover, the Court could find that Defendant's conduct, even if in violation of the FLSA, was in good faith, which would prevent Plaintiffs from

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

9212083.1 ME015-027

Joint Motion for Approval of Settlement Agreement

1  recovering liquidated damages.  These issues affect the total liability regardless of the overtime

2  calculation method applied.  (Youril Dec., ¶¶ 7-10.)  A denial of liquidated damages alone would

3  reduce the range of Plaintiffs' potential recovery by 50%.

4        Taken together, these terms of the Settlement Agreement provide Plaintiffs with prompt,

5  significant, and certain recovery, especially given the risks presented by continued litigation.  The

6  Settlement Agreement provides Plaintiffs with relief that is near the maximum range for recovery

7  at trial.  (Mastagni Dec., ¶15-18; Youril Dec., ¶¶ 7-10.)  Each Plaintiff's damages allocation is

8  based upon a three-year statute of limitations, the most favorable calculation method (i.e. Section

9  778.113), more generous contract overtime definitions for a portion of the recovery period

10 (without offsets), and partial liquidated damages.  (Mastagni Dec., ¶17.)  Accordingly, this factor

11 weighs in favor of settlement.

### 2. The Stage of the Proceedings and the Amount of Discovery Conducted

13 Courts assess the stage of the proceedings and the amount of discovery completed to

14 ensure that parties have an adequate appreciation of the merits of the case before reaching a

15 settlement.  (*See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that

16 occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the

17 claims before reaching a resolution.").)  As long as the parties have "sufficient information to

18 make an informed decision about settlement," this factor will weigh in favor of approval.  (*Linney

19 v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).)

20       Here, the Parties have sufficient information to make an informed decision regarding

21 settlement.  The Parties engaged in both formal and informal discovery.  (Youril Dec., ¶ 11.)

22 Plaintiffs requested and received the necessary evidence (i.e., time and payroll records) to form an

23 adequate appreciation of the merits of the cases before reaching the proposed settlement.  (Youril

24 Dec., ¶ 11.)  Defendant produced records related to Plaintiffs' hours worked and compensation

25 paid, as well as policies, memoranda of understanding, and other local authorities governing

26 Plaintiffs' compensation.  (Youril Dec., ¶ 11.)  Finally, the parties utilized the services of a

27 mediator.  Accordingly, this factor also weighs in favor of settlement.

28

11

Joint Motion for Approval of Settlement Agreement

9212083.1 ME015-027

### 3. The Seriousness of the Litigation Risks Faced by the Parties

Settlement is favored where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." (*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015).)  As discussed in greater detail above, the Settlement Agreement provides Plaintiffs with nearly complete relief.  In other words, continued litigation would harm Plaintiffs by jeopardizing the relief already secured on their behalves.

As discussed above, there are a number of variables that could impact the calculation of damages in this case.  First, the Parties dispute whether the City has *any* liability for failing to include holiday-in-lieu pay in the regular rate of pay.  If the City prevailed on the liability question, Plaintiffs would receive nothing.  Second, Plaintiffs may not recover at trial any damages based upon the City's alleged willfulness (which would reduce the recovery period in the proposed settlement from three (3) years to two (2) years), or the City's alleged lack of good faith, which would reduce the claimed damages by 50%.  If Plaintiffs do not prevail on these issues, their recovery would be significantly diminished.  Third, the City contends that calculation of any back pay due should be based upon the hourly method set forth at 29 C.F.R. § 778.110(b). If the City were to prevail in this regard, again, Plaintiffs' recovery would be diminished by over 66%.  All of these concerns pose a risk to Plaintiffs that could decrease their overall recovery.

### 4. The Scope of Any Release Provision in the Settlement Agreement

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself."  (*Slezak*, 2017 WL 2688224, at *5.)  Expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. (*See Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled.").)

Here, the release extends to all claims "known or unknown, foreseen or unforeseen, arising out of the matters raised in the Action or related thereto as of and including the Effective Date of this Agreement, including all claims made in this lawsuit for unpaid overtime, liquidated damages and attorneys' fees, and Plaintiffs hereby fully, finally and completely release, waive and

discharge Defendant, and its officers, agents, employees, successors and assigns from any further claims related to the Action for any alleged FLSA violation that has occurred up to and including the Effective Date of this Agreement." (Youril Dec., ¶ 12.) The Parties share a further understanding that only those claims arising from or attributable to Plaintiffs' claims in this action are being released. In fact, the release itself confirms that "this release does not include claims relating to conduct or activity which does not arise from or is not attributable to Plaintiffs' FLSA claims or to any conduct or activity which occurs after the Effective Date of this Agreement." (*Id*.) Such a narrowly-tailored and carefully drawn release, coupled with the Parties' shared understanding, favors approval of settlement.

### 5. The Experience and Views of Counsel

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." (*Larsen v. Trader Joe's Co.*, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014).) Here, Plaintiffs' counsel David Mastagni asserts that the terms of the Settlement Agreement are fair and reasonable, and that the settlement amount is within the maximum range that Plaintiffs could expect to recover if this matter were to proceed to trial. (Mastagni Dec., ¶¶ 18.) David Mastagni has years of experience litigating FLSA claims and has settled multiple FLSA claims and obtained court approval of those settlements. (Mastagni Dec., ¶ 2-3.) Thus, his evaluation of the case is reliable.

Collectively and individually, counsel for Defendant have years of experience advising public agencies on FLSA matters and defending public agencies in FLSA lawsuits. (Youril Dec., ¶ 2.) Based on this experience, it is the position of defense counsel that this settlement is fair and reasonable and will have a materially beneficial effect on Plaintiffs' compensation. (*Id*.)

### 6. The Possibility of Fraud or Collusion

At all times, settlement negotiations have been at arms-length and there has been no fraud or collusion. Approval by all of the Plaintiffs further supports a finding that counsel did not collude, or otherwise allow self-interest to infect the settlement negotiations. (Mastagni Dec., ¶ 12; Youril Dec., ¶ 12.)

Joint Motion for Approval of Settlement Agreement

9212083.1 ME015-027

"The likelihood of fraud or collusion is low . . . [when] the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator." (*Slezak*, 2017 WL 2688224, at *5.)  Here, at all times, settlement negotiations have been at arms-length and there has been no fraud or collusion. (Mastagni Dec., ¶ 7-11; Youril Dec., ¶ 5, 8-9.)  Prior to mediation, the Parties extensively briefed core legal issues in the Motion to Dismiss.  The Parties also participated in a full-day mediation with Mr. Pearl before ultimately reaching agreement. (Youril Dec., ¶ 5.) In addition, each Plaintiff has been provided with a copy of the Settlement Agreement and has had an opportunity to review it and discuss it with their representatives. (Mastagni Dec., ¶ 12.)  After doing so, each Plaintiff voluntarily agreed the terms of the Settlement Agreement, as well as their individual settlement amounts, by executing individual "Settlement Agreement and Release" pages. (Mastagni Dec., ¶ 12; Youril Dec., ¶ 12.)

### C. ATTORNEYS' FEES AND COSTS

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." (*Selk*, 159 F.Supp.3d at 1180; *see also* 29 U.S.C. § 216(b) (providing that, in an FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").)  "Under Ninth Circuit precedent, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method for awarding attorneys' fees." (*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).)

The Ninth Circuit has generally set a 25% benchmark for the award of attorneys' fees in common fund cases. (*Id*. at 1047-48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25 percent of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."))  Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. (*Vizcaino*, 290 F.3d at 1048-50; *see also In re Online DVD-Rental Antitrust Ltig.*, 779 F.3d 934, 954-55 (9th Cir. 2015).)  Ultimately, however, "[s]election of the benchmark or any other rate

14

1  must be supported by findings that take into account all of the circumstances of the case."
2  (*Vizcaino*, 290 F.3d at 1048.)  The Ninth Circuit has approved the use of lodestar cross-checks as
3  a way of determining the reasonableness of a particular percentage recovery of a common fund.
4  (*Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the
5  lodestar calculation may convince a court that a lower percentage is reasonable.  Similarly, the
6  lodestar calculation can be helpful in suggesting a higher percentage when litigation has been
7  protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.)

8        Pursuant to the Settlement Agreement, Plaintiffs' counsel will be paid $109,547.98 in
9  attorneys' fees and $3,948.17 in costs, and Plaintiffs will receive $236,503.85.  Thus, attorneys'
10 fees and costs represent approximately 31% of the $350,000 recovery.  The 31% is consistent
11 with awards allowed in similar cases, especially given the evolving legal issues that transpired
12 *during* the litigation.  (*See Slezak*, 2017 WL 2688224, at *3 (approving attorneys' fees and costs
13 award of $52,069 in a settlement of a FLSA collective action, which was 31% of the total
14 settlement amount); *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856 (C.D. Cal. July
15 21, 2008) (awarding 34% of the common fund in attorneys' fees in a wage and hour class action
16 settlement); *Beidleman v. City of Modesto*, No. 1:16-cv-01100-DAD-SKO, 2018 WL 1305713, at
17 *6 (E.D. Cal. Mar. 13, 2018) (approving attorneys' fees and costs award of $43,414.92, which
18 represented thirty percent of the total settlement amount);   *Hightower v. JPMorgan Chase Bank,*
19 *N.A.* 2015 WL 9664959 (C.D. Cal., Aug. 4, 2015) (approving attorneys' fees of 30% of the
20 settlement fund); *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012)
21 (approving fees in the amount of 33% of the common fund); *Knight v. Red Door Salons*, *Inc.*,
22 2009 WL 248367, at *17 (N.D. Cal. Feb. 2, 2009) ("nearly all common fund awards range around
23 30 percent"); *Vasquez v. Coast Valley Roofing*, *Inc.*, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010)
24 (*citing* to wage and hour cases where courts approved awards ranging from 30 to 33%); *Singer v.*
25 *Becton Dickinson and Co.* 2010 WL 2196104 (C.D. Cal., April 24, 2014), at *8 (approving an
26 attorneys' fee award of 33.33%); *Selk,* 159 F.Supp.3d at 1180 (approving attorneys' fees and costs
27 award of $22,000 in a settlement of a FLSA collective action, which was 45% of the total
28 settlement amount); *Goodwin v. Winn Mgmt. Grp. LLC*, No. 1:15-cv-00606-DAD-EPG, 2018

1  WL 1036406, at *7 (E.D. Cal. Feb. 23, 2018) (approving attorneys' fees of $75,000 in a

2  settlement of a class action and FLSA collective action, which was 30% of the total settlement

3  amount).)

4         Calculation of the lodestar amount may be used as a cross-check to assess the

5  reasonableness of the percentage award. (*Bond v. Ferguson Enters., Inc.*, No. 1:09–cv–1662

6  OWW MJS, 2011 WL 2648879, at *11 (E.D. Cal. June 30, 2011).) When using a lodestar as a

7  cross-check, courts "may use a rough calculation of the lodestar." (*Id*. at *12.) The court

8  typically applies a lodestar multiplier after multiplying a reasonable hourly rate by the number of

9  hours worked. (*Quiroz v. City of Ceres* (E.D. Cal., Mar. 1, 2019, No. 117CV00444DADBAM)

10 2019 WL 1005071, at *6.)(citing, *Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 298 (N.D.

11 Cal. 1995)("Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex

12 class action litigation."); 4 Newberg on Class Actions § 14.7 (courts typically approve percentage

13 awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is

14 comparable to multipliers used by the courts").).

15        Here, the attorneys' fees and costs provided by the Settlement Agreement are below those

16 that would be provided to a prevailing party in a wage and hour action in the Eastern District if

17 the fee award was calculated based upon the hours expended at the prevailing rates, particularly if

18 any multiplier is applied.

19        Prevailing parties are entitled to receive an award of fees for all hours reasonably

20 expended at rates in line with the "prevailing market rate of the relevant community." (*Carson v.

21 Billings Police Dept.,* 470 F.3d 889, 891 (9th Cir. 2006).) This court has previously accepted as

22 reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and

23 between $545 and $695 for senior counsel and partners. (*See Emmons v. Quest Diagnostics

24 Clinical Labs., Inc.*, No. 1:13–cv–00474–DAD– BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb.

25 27, 2017); *Quiroz v. City of Ceres*, *supra*, 2019 WL 1005071 at *7.) Other courts in the Eastern

26 District have approved similar rates in various class action settings. (*See Barbosa v. Cargill Meat

27 Sols. Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for

28 attorneys with two to eight years of experience, and $720 per hour for attorney with 21 years of

16

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

experience); *Gong– Chun v. Aetna Inc.*, No. 1:09–cv–01995–SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners).)

"[F]ees for work performed by non-attorneys such as paralegals may be billed separately, at market rates, if this is 'the prevailing practice in a given community.' " *Trustees of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co*., 460 F.3d 1253, 1257 (9th Cir. 2006) (citing *Missouri v. Jenkins*, 491 U.S. 274, 287 (1989)). In house accountant work may be awarded at the non-attorney rate granted to paralegals. *Cardoza v. Mango King Farmers Market Corp.* (E.D.N.Y., Sept. 1, 2015, No. 14-CV-3314 SJ RER) 2015 WL 5561033, at *16. This District has approved "paralegal or other personnel support rates" ranging from $125.00, $145.00 and $155.00. (*Spence v. Wells Fargo Bank, N.A.* (E.D. Cal., Mar. 12, 2012, No. 1:10-CV-2057 AWI GSA) 2012 WL 844713, at *1, report and recommendation adopted (E.D. Cal., Apr. 12, 2012, No. 1:10-CV-2057 AWI GSA) 2012 WL 13048511.) Applying the hourly rates previously approved by this Court as reasonable for lodestar purposes to the hours reasonably expended by Plaintiffs' counsel on this matter to date would result in a range of fees from $154,859.50 on the low end to $200,937.00 on the high end, without applying any multiplier.[3] (Mastagni Dec., ¶ 22.) Instead, Plaintiffs' counsel seeks approval of a substantially reduced amount ($109,547.98) for *all* firm time expended on this matter, including hours reasonably expended by paralegals and a forensic accountant. Therefore, in light of the lodestar cross-check, this Court should approve the slight deviation from the 25% benchmark.

## V. CONCLUSION

Based on the foregoing, the Parties respectfully request this Court approve the proposed Settlement Agreement.

---

[3] The range of fees is based on a low of $125 per hour for non-attorney work performed by the firm's in-house accountant and paralegals, $300 per hour for associates, and $490 per hour for senior counsel and partners, and a high of $150 per hour for non-attorney work performed by the firm's in-house accountant and paralegals, $420 per hour for associates, and $695 per hour for senior counsel and partners. (Mastagni Dec., ¶ 22.)

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

| | | |
|---|---|---|
| Dated: April 6, 2020 | | LIEBERT CASSIDY WHITMORE |
| | By: | */s/ Michael D. Youril* <br> Jesse J. Maddox <br> Michael D. Youril <br> Attorneys for Defendant CITY OF MERCED |
| Dated: April 6, 2020 | | MASTAGNI HOLSTEDT, APC |
| | By: | */s/ David E. Mastagni* <br> David Mastagni <br> Isaac S. Stevens <br> Attorneys for Plaintiffs |

18

Joint Motion for Approval of Settlement Agreement

9212083.1 ME015-027