1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

| | |
|---|---|
| CHAD ENGLERT, et al., | Case No. 1:18-cv-01239-NONE-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING MOTION FOR FINAL APPROVAL OF COLLECTIVE ACTION |
| v. | |
| CITY OF MERCED, | ORDER REQUIRING PLAINTIFFS TO SUBMIT DOCUMENTATION TO SUPPORT REQUEST FOR COSTS |
| Defendant. | |
| | (ECF Nos. 38, 41, 42, 43) |
| | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

9
10
11
12
13
14
15
16
17

18   Chad Englert, Richard Ramirez, Matthew Van Hagen, Ryan Paskin, and Casey Wilson,

19 on behalf of themselves and all other similarly situated individuals (collectively "Plaintiffs")

20 filed this collective action against the City of Merced ("Defendant") alleging violation of the Fair

21 Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.  Currently before the Court is a joint

22 motion for approval of a settlement agreement.

## I.

## BACKGROUND

23
24

25   Plaintiffs are or were employed by Defendant with the conditions of their employment

26 governed by a memorandum of understanding ("MOU") between Defendant and the

27 International Association of Firefighters, Local 1479.  (Compl. ¶¶ 20, 21, ECF No. 1.)  Plaintiffs'

28 salaries were paid pursuant to the MOU.  (Id. at ¶ 22.)  Defendant did not allow Plaintiffs idle

1

holiday hours but they were required to work their regular assigned shift regardless of whether it was a holiday.  (Id. at ¶ 26.)  Plaintiffs are paid compensation in lieu of observing holidays ("holiday-in-lieu") and are not allowed to use this holiday in lieu compensation as leave.  (Id.)  Defendant excluded this holiday-in-lieu pay from the "regular rate" used to calculate overtime for Plaintiffs.  (Id. at 27.)  Plaintiffs take the position that Defendant is miscalculating their overtime rate by not including the holiday-in-lieu pay in the overtime rate calculation.  Plaintiffs contend that by excluding the holiday-in-lieu pay from their "regular rate" of pay, Defendant is violating the Fair Labor Standards Act ("FLSA") by failing to pay for all hours of overtime worked.

Plaintiffs filed this action alleging failure to pay overtime compensation on September 12, 2018.  (ECF No. 1.)  On October 9, 2018, Defendant filed a motion to dismiss that was denied on December 21, 2018.  (ECF Nos. 4, 18.)  Plaintiffs were ordered to file an amended complaint setting forth the additional payments they contend were improperly excluded from the regular rate or a notice that they are intending to proceed based on their allegations regarding holiday pay within thirty days.  (ECF No. 18.)  On January 18, 2019, Plaintiffs filed a notice that they intend to proceed based on their allegations regarding holiday pay.  (ECF No. 19.)  On February 7, 2019, Defendant filed an answer to the complaint.  (ECF No. 22.)

On February 13, 2019, the scheduling order issued in this matter.  (ECF No. 24.)  The parties stipulation to amend the scheduling order was granted on November 11, 2019.  (ECF Nos. 29, 30.)  On January 15, 2020, Plaintiffs filed a motion to compel which was withdrawn on February 6, 2020, and a notice of settlement was filed.  (ECF Nos. 31, 34, 35.)  All pending dates and matters were vacated and the parties were ordered to file a motion for approval of the settlement on or before April 6, 2020.  (ECF No. 36.)  A joint motion to approve the settlement agreement was filed on April 6, 2020.  (ECF No. 38.)  During the pendency of this action, additional plaintiffs have filed a consent to join in the action.

On April 24, 2020, an order issued requiring supplemental briefing to be filed within seven days.  (ECF No. 40.)  On May 1, 2020, Plaintiffs filed a supplemental brief in support of the joint motion for approval of settlement, a stipulation for conditional certification of the FLSA

collective action, and a notice of filing of amended signature pages.  (ECF Nos. 41, 42, 43.)

## II.

## TERMS OF THE SETTLMENT AGREEMENT

Defendants shall pay a total of $350,000.00 to settle the action.  (Settlement Agreement and Release of Claims (hereafter "Settlement Agreement") ¶ 1.A., ECF No. 38-5.)  This amount includes damages for the plaintiffs, attorney fees, and the costs of the action.  (Id.)  A total of $236,503.85 is allocated to pay damages to the plaintiffs.  (Id. at ¶ 1.B.)  Attorney fees and costs will be paid in the amount of $113,496.15 for services rendered in the action.  (Id. at ¶ 1.C.)

Each collective action member agrees to dismiss with prejudice his or her claims in the action.  (Id. at ¶ 2.)  This agreement applies to any complaint, claim, grievance or charge for FLSA overtime compensation related to the action filed with any state or federal court, with any administrative body, agency, board, commission, or other entity.  (Id.)  Plaintiffs are releasing all claims, known or unknown, arising out of the matters raised in this action.  (Id. at ¶ 3.)  This includes all claims made in this lawsuit for unpaid overtime, liquidated damages and attorney fees that have occurred up to and including the effective date of the settlement agreement.  (Id.)

Each of the fifty-seven plaintiffs that have joined the action has signed an individual signature page for the settlement agreement and release.[1]  (See ECF No. 38-5 at 7-63.)

## III.

## LEGAL STANDARD

The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract or otherwise waived.  Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013); Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981).  The FLSA provides the right of an employee to represent similarly situated employees in a suit against their employer for the failure to pay minimum wage or overtime

---

[1] The joint motion states that the settlement agreement is signed by all 53 plaintiffs.  However, the Court finds that 57 individuals have signed the agreement and Exhibit A which includes the calculation of damages lists 57 individuals.

In the joint motion, several of the individual release forms stated that attorney fees in the amount of $116,965.39.  On May 1, 2020, amended signature pages were filed stating that the original forms filed were the draft signature page and the final pages were corrected to reflect the correct attorney fee amount.  (ECF No. 43.)

1  compensation.   29 U.S.C. § 216(b).   To participate in the collective action an employee is
2  required to give his consent in writing to become a party.   29 U.S.C. § 216(b); see Hoffmann-La
3  Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989) (rights in a collective action under the FLSA
4  are dependent on the employee receiving accurate and timely notice about the pendency of the
5  collective action, so that the employee can make informed decisions about whether to
6  participate).   "If an employee does not file a written consent, then that employee is not bound by
7  the outcome of the collective action."   Edwards v. City of Long Beach, 467 F.Supp.2d 986, 989
8  (C.D. Cal. 2006).

9        Since an employee cannot waive claims under the FLSA, an FLSA claim "may not be
10  settled without supervision of either the Secretary of Labor or a district court."   Nen Thio v. Genji,
11  LLC, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014); Selk v. Pioneers Mem'l Healthcare Dist., 159
12  F.Supp.3d 1164, 1172 (S.D. Cal. 2016); Kerzich v. Cty. of Tuolumne, 335 F.Supp.3d 1179, 1183
13  (E.D. Cal. 2018).   The Ninth Circuit has not established criteria for district courts to use in
14  determining whether an FLSA collective action settlement should be approved.   Kerzich, 335
15  F.Supp.3d at 1183.   District courts in this circuit have used the Eleventh Circuit's approach which
16  considers whether the settlement is a fair and reasonable resolution of a bona fide dispute.   Id.; Nen
17  Thio, 14 F.Supp.3d at 1333; Selk, 159 F.Supp.3d at 1172.

18        After determining that a bona fide dispute exists, the court must determine whether the
19  settlement is fair and reasonable.   Nen Thio, 14 F.Supp.3d at 1340; Selk, 159 F.Supp.3d at 1172.
20  "In making this determination, many courts begin with the well-established criteria for assessing
21  whether a class action settlement is 'fair, reasonable, adequate' under Fed. R. Civ. P. 23(e),"
22  recognizing that not all the factors apply in an FLSA settlement   Selk, 159 F.Supp.3d at 1172;
23  Kerzich, 335 F.Supp.3d at 1184; Smith v. Kaiser Found. Hosps., No. 3:18-CV-00780-KSC, 2019
24  WL 5864170, at *10 (S.D. Cal. Nov. 7, 2019).   In this circuit, courts "have balanced factors such
25  as: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further
26  litigation; the risk of maintaining class action status throughout the trial; the amount offered in
27  settlement; the extent of discovery completed and the stage of the proceedings; the experience and
28  views of counsel; the presence of a governmental participant; and the reaction of the class

1   members to the proposed settlement.  Kerzich, 335 F.Supp.3d at 1184 (quoting Khanna v. Intercon

2   Sec. Sys., Inc., No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014),

3   order corrected, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015)).  If the settlement reflects a reasonable

4   compromise over a bona fide dispute, the district court may approve the settlement in order to

5   promote the policy of encouraging settlement of litigation.  Nen Thio, 14 F.Supp.3d at 1340;

6   Kerzich, 335 F.Supp.3d at 1185.

7                                                    **IV.**

8                                            **DISCUSSION**

9       **A.    Whether Collective Action Should be Certified**

10          The parties have filed a stipulation for conditional certification of the FLSA collective

11   action.[2]  Determining whether a collective action is appropriate is within the discretion of the

12   district court.  Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004).  The

13   Ninth Circuit has held that "plaintiffs are similarly situated, and may proceed in a collective, to

14   the extent they share a similar issue of law or fact material to the disposition of their FLSA

15   claims."  Campbell v. City of Los Angeles, 903 F.3d 1090, 1117 (9th Cir. 2018).  While it is

16   unclear what standard should be used to determine if the employees are similarly situated under

17   the FLSA, given that the employee consents to participating in the FLSA actions courts do find

18   that "the requisite showing of similarity of claims under the FLSA is considerably less stringent

19   than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure."  Hill v. R+L

20   Carriers, Inc., 690 F.Supp.2d 1001, 1009 (N.D. Cal. 2010); accord Millan v. Cascade Water

21   Servs., Inc., 310 F.R.D. 593, 607 (E.D. Cal. 2015).  The plaintiffs can proceed as a collective

22   action where they allege a single, FLSA-violating policy and argue a common theory of

23   defendants' statutory violations.  Senne v. Kansas City Royals Baseball Corp., 934 F.3d 918,

24   949 (9th Cir. 2019).

25

26   [2] Plaintiffs assert in their supplemental memorandum that Campbell made clear that they are not required to certify a
     collective action.  However, Campbell does not stand for the proposition that a collective action can proceed without
27   a finding that the members are similarly situated which typically occurs when the collective is certified.  The parties'
     memorandum in support of approval of the settlement did not specifically address whether the employees were
28   similarly situated.  It was for this reason that they were required to provide supplemental briefing on this issue.

                                                    5

1    Federally courts generally use a two-step approach to determine whether to allow a

2 collective action to proceed. Tijero v. Aaron Bros., Inc., 301 F.R.D. 314, 323 (N.D. Cal. 2013).

3 Initially, the court determines whether the potential class members should receive notice of the

4 action, and plaintiffs can satisfy their burden to show that they are "similarly situated" by

5 making substantial allegations, supported by declarations or discovery, that "the putative class

6 members were together the victims of a single decision, policy, or plan." Nen Thio, 14

7 F.Supp.3d at 1340 (citations omitted).  The determination is based on a fairly lenient standard,

8 and typically results in conditional certification.  Id.

9    The second certification decision is usually made at the close of discovery when the

10 defendant brings a motion to decertify the class.  Nen Thio, 14 F.Supp.3d at 1341.  In Campbell,

11 the Ninth Circuit declined to adopt the two approaches used by courts to decertify a collective

12 action, finding the district court may be able to decertify where conditions make the collective

13 mechanism truly infeasible, but it cannot reject the party plaintiffs' choice to proceed

14 collectively based on its perception of likely inconvenience.  Campbell, 903 F.3d at 1117.  The

15 Court did not identify the method that should be used to decertify a collective action stating that

16 it did "not intend to preclude the district courts from employing, if they wish, a version of the ad

17 hoc test modified so as to account for the flaws we have identified.  Nor do we intend to

18 preclude the district courts from employing any other, differently titled or structured test that

19 otherwise gives full effect to our understanding of section 216(b)."  Id. at 1117 n.21.  Plaintiffs

20 have the burden at all stages of litigation of proving they meet the "similarly situated"

21 requirement.  Vasquez v. Coast Valley Roofing, Inc., 670 F.Supp.2d 1114, 1123–24 (E.D. Cal.

22 2009).  Here, since the parties are stipulating to conditionally certify the collective action, the

23 Court considers certification using the fairly lenient standard for the first step.  Nen Thio, 14

24 F.Supp.3d at 1340.

25    In this instance, all members of the collective action are either current or former

26 firefighters employed by Defendant.  Plaintiffs allege that they were all subjected to the same

27 policy under the MOU which deprived them of overtime based on a policy that failed to include

28 holiday in lieu pay in their regular rate.  The Court finds that the policy alleged to have violated

1  the FLSA is a department-wide policy to which all plaintiffs were subjected which supports

2  finding that the employees are similarly situated under the FLSA. Campbell, 903 F.3d at 1120.

3  The Court finds that the plaintiffs are similarly situated under the FLSA to proceed as a

4  collective action.

5      **B.     Whether a Bona Fide Dispute Exists**

6      The parties argue that settlement of this action resolves several bona fide disputes

7  between the parties regarding the existence and extent of Defendant's liability: treatment of

8  holiday-in-lieu pay which has not been addressed by the Ninth Circuit and the methodology to be

9  used to calculate the "regular rate" of pay, as well as whether Plaintiffs are entitled to liquidated

10 damages and the limitations period that would apply to Plaintiffs' claims.

11     A bona fide dispute exists where there are legitimate questions about the existence and

12 extent of a defendant's liability and there is some doubt that the plaintiffs would succeed on the

13 merits of their FLSA claims in the litigation. Selk, 159 F.Supp.3d at 1172. "If there is no

14 question that the FLSA entitles plaintiffs to the compensation they seek, then a court will not

15 approve a settlement because to do so would allow the employer to avoid the full cost of

16 complying with the statute." Id.

17     The Court finds that a bona fide dispute exists between the parties over Defendant's

18 potential liability under the FLSA. At the time that this lawsuit was filed, the parties disagreed

19 regarding whether it was required for Defendant to include holiday-in-lieu pay in the regular rate

20 for the purposes of calculating overtime under the FLSA.

21     The treatment of holiday-in-lieu pay under the FLSA has not been addressed by the Ninth

22 Circuit. The issue of whether "in-lieu" benefits must be included in the "regular rate" is

23 currently being, or has recently been, litigated in numerous California District courts. See

24 Aboudara, et al. v. City of Santa Rosa, Case No. 4:17-cv-01661-HSG (N.D. Cal.) (settlement

25 agreement approved May 10, 2019); Lewis, et al. v. County of Colusa, Case No. 2:16-cv-01745-

26 VC (E.D. Cal.) (closed July 10, 2019 due to settlement); Goddard, et al. v. City of Cathedral

27 City, Case No. 5:19-cv-00482-PSG-SHK (C.D. Cal.) (filed March 18, 2019); Burris v. City of

28 Petaluma, Case No. 4:18-cv-02102-HSG (N.D. Cal.) (order granting stipulation for approval of

settlement agreement June 28, 2019); <u>Valentine v. Sacramento Metro. Fire Dist.</u>, No. 2:17-CV-00827-KJM-EFB, 2019 WL 651654, at *3 (E.D. Cal. Feb. 15, 2019) (granting motion for approval of settlement agreement).

While some courts have held that holiday-in-lieu pay must be included in the regular rate of pay, the Department of Labor ("DOL") recently issued a final rule addressing the regular rate under the FLSA.

> Current Department regulations support excluding holiday-in-lieu pay from the regular rate. Under 29 CFR 778.219, where an employee forgoes his or her holiday and works, and is paid for his or her normal work plus an additional amount for the holiday, the additional amount paid for working the holiday is not included in the regular rate. The Department applied this principle in a 2006 opinion letter concluding that holiday-in-lieu pay could be excluded from the regular rate where the employer provided nine "recognized" holidays and two "floating" holidays paid in a lump sum, and on occasion when employees forgo a holiday and work they received both pay for the hours worked and holiday pay. The Department notes that it does not matter whether the employee voluntarily forgoes the holiday to work or is required to work the holiday by the schedule set for the employee. Nothing in this regulation makes the excludability of such payments dependent on the employee having the option to work or not work on the holiday. All that is required for the holiday-in-lieu pay to be excludable is that the employee is paid an amount for the holiday, in addition to being paid for his hours worked on the holiday.

Regular Rate Under the Fair Labor Standards Act, 84 FR 68736-01 (Dec. 2019).

To clarify the regulation, the following example was added to 29 C.F.R. § 778.219(a) involving employees who work a set schedule irrespective of holidays.

> An employee is scheduled to work a set schedule of two 24–hour shifts on duty, followed by four 24–hour shifts off duty. This cycle repeats every six days. The employer recognizes ten holidays per year and provides employees with holiday pay for these days at amounts approximately equivalent to their normal earnings for a similar period of working time. Due to the cycle of the schedule, employees may be on duty during some recognized holidays and off duty during others, and due to the nature of their work, employees may be required to forgo a holiday if an emergency arises. In recognition of this fact, the employer provides the employees holiday pay regardless of whether the employee works on the holiday. If the employee works on the holiday, the employee will receive his or her regular salary in addition to the holiday pay. In these circumstances, the sum allocable to the holiday pay may be excluded from the regular rate.

29 C.F.R. § 778.219(a)(4).

Plaintiffs argue that in denying Defendant's motion to dismiss, Judge O'Neill made the legal determination that holiday-in-lieu pay may not be excluded under 29 U.S.C. § 270(e)(2) and that this ruling is subject to the law of the case doctrine. Defendant contends that under

Judge O'Neill's ruling compensation only needs to be included in the regular rate when an employee actually works the holiday.  Given this clarification of the regulations by the DOL, the Court finds that there is a bona fide dispute as to whether Defendant was required to provide holiday-in-lieu pay in the regular rate and whether Plaintiffs could prevail in this action.

Additionally, the parties dispute the method to calculate damages if Plaintiffs were to prevail in this action.  Plaintiffs contend that damages should be calculated using the method prescribed by 29 C.F.R. § 778.113 while Defendant contends that the correct method is set forth in 29 C.F.R. § 778.110(b).

Section 778.113 applies to salaried employees in general.  For employees paid other than by workweek, subsection (b) provides:

> A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks).  A semimonthly salary is translated into its equivalent weekly wage by multiplying by 24 and dividing by 52. . . . The parties may provide that the regular rates shall be determined by dividing the monthly salary by the number of working days in the month and then by the number of hours of the normal or regular workday.

29 C.F.R. § 778.113(b).  Once a weekly rate is arrived at, the "regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate."  29 C.F.R. § 778.113(a).

Under section 778.110(b) which applies to hourly rate employees, the bonus is added to the period for which the compensation applies and the total amount of compensation is divided by the number of hours worked to arrive at the hourly rate.  29 C.F.R. § 778.110(b).

Plaintiffs state that if Defendant's method prevails their claims would be reduced by over sixty-six percent.  A bona fide dispute exists between the parties as to the proper method to calculate damages in this action.

The parties also dispute whether Plaintiffs would be entitled to liquidated damages. Under 29 U.S.C. § 216(b), an employer who violates minimum wage or overtime provisions of the FLSA can be liable for an equal amount of liquidated damages in addition to the unpaid compensation due.  Under 29 U.S.C. § 260, an employer has a defense to liquidated damages where the employer acted in good faith and had reasonable grounds for believing that the act or

1 omission was not a violation of the FLSA.  "[T]he employer has the burden of establishing

2 subjective and objective good faith in its violation of the FLSA."  Local 246 Util. Workers Union

3 of Am. v. S. California Edison Co., 83 F.3d 292, 297 (9th Cir. 1996).

4        Plaintiffs contend that Defendant cannot establish that it acted in good faith based on the

5 numerous court decisions addressing the exclusion of holiday-in-lieu pay.  Defendant argues that

6 the prior rulings are distinguishable and the lack of Ninth Circuit guidance on the exclusion of

7 holiday-in-lieu pay renders recovery of liquidated damages uncertain.  Further, Defendant asserts

8 that its position was consistent with the 2006 DOL opinion letter finding that holiday in lieu pay

9 was not to be included in the regular rate of pay.  A bona fide dispute exists as to whether

10 Plaintiffs are entitled to liquidated damages should they prevail in this action.

11        Finally, the parties dispute whether any alleged violation would be willful.  The

12 limitations period for any cause of action to recover unpaid minimum wages, unpaid overtime

13 compensation, or liquidated damages under the FLSA is two years after the cause of action

14 accrued.  29 U.S.C. § 255(a).  However, where the violation arises out of a willful violation of

15 the FLSA, the action may be commenced within three years after the cause of action accrued.  29

16 U.S.C.A. § 255(a).  If it was found that the conduct of Defendant was not willful then Plaintiffs

17 would be precluded from recovering damages beyond two years prior to filing this action.  A

18 bona fide dispute exists over the limitations period that applies in this action.

19        The Court finds that a bona fide dispute exists as to whether there was a violation of the

20 FLSA, the method for calculating damages, whether liquidated damages could be recovered in

21 this action, and the appropriate statute of limitations.

22        **C.**      **Whether Settlement is Fair and Reasonable**

23        Having found that a bona fide dispute exists, the Court considers whether the settlement

24 is fair and reasonable.  The parties agree that the factors identified in Selk should be used to

25 determine whether a settlement is fair and reasonable.  In Selk, the court considered "(1) the

26 plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery

27 completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any

28 release provision in the settlement agreement; (5) the experience and views of counsel and the

opinion of participating plaintiffs; and (6) the possibility of fraud or collusion."   Selk, 159 F.Supp.3d at 1173.  "In considering these factors under a totality of the circumstances approach, a district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA."  Id.

       1.    Possible Range of Recovery

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement."  Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc. ("DIRECTV"), 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 5 Moore Federal Practice, § 23.85[2][b] (Matthew Bender 3d. ed.)).  "When evaluating the strength of a case, the Court should 'evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements.' "  Millan, 310 F.R.D. at 610 (quoting Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d 964, 975 (E.D. Cal. 2012)).

"The amount offered in settlement is generally considered to be the most important considerations of any class settlement."  Millan, 310 F.R.D. at 611.  The range of possible approval focuses on "substantive fairness and adequacy," and "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  Vasquez, 670 F.Supp.2d at 1125 (quoting In re Tableware Antitrust Litig., 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007)).

In the joint motion for approval of the settlement, Plaintiffs assert that the amount offered to settle this action is near the maximum range for Plaintiffs' recovery at trial.  Plaintiffs did not provide the amount of damages that could be recovered using their method of calculating damages.  For this reason, the Court required Plaintiffs to provide supplemental briefing on the damages that could be recovered using the alternate method of calculating damages.

In their supplemental briefing, Plaintiffs state that in order to efficiently prosecute and settle this action, damages estimates were prepared based on the plaintiffs' payroll data because precise calculations of backpay are difficult, costly and overly time consuming to prepare.  Plaintiffs' estimation of damages is $466,572.82.  Plaintiff asserts that this estimate significantly

overstates the maximum damages available because it counts paid time off as hours worked for all unscheduled overtime in 2018; provides 6 hours of scheduled overtime each week regardless of whether leave was taken in the twenty-four day work cycle, and does not apply any statutory offsets or credits that Defendant could have asserted.

Defendant calculated that damages in this action would be roughly $68,060.00, including liquidated damages.  (Youril Decl. ¶ 10.)  This amount was arrived at based on the actual hours worked and a .5 premium.  (Id.)  The rate used was the 2018-2019 fiscal year compensation which was a 2.5 percent increase over the previous two years.  (Id.)  The calculation also included hours worked on mutual assignments.  (Id.)  Defendants believe this is close to or above the maximum range of recovery.  (Id.)

The district court is to evaluate the potential range of recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims.  Selk, 159 F.Supp.3d at 1174; see also Millan, 310 F.R.D. at 611 ("To determine whether that settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated.").  "[I]n comparing the amount proposed in the settlement with the amount that plaintiffs could have obtained at trial, the court must be satisfied that the amount left on the settlement table is fair and reasonable under the circumstances presented."  Selk, 159 F.Supp.3d at 1174.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000) (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)).  "Even a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case."  Millan, 310 F.R.D. at 611.

Defendant has offered $350,000 to settle this action, which is seventy-five percent of Plaintiffs' estimated damages.  However, Plaintiffs assert that their estimated damages exceed the actual amount that they could be expected to receive if they were to prevail at trial.  Plaintiff contends that Defendants are offering close to the maximum that could be awarded should this

matter proceed to trial.

Each plaintiff will receive damages based upon the number of statutory overtime hours worked over the three years prior to the individual plaintiff's opt in date and the amount of holiday-in-lieu pay earned. Each plaintiff was provided with the schedule of payments showing the damages that he or she would receive and accepted the settlement and release.

Given the uncertainties in the method of calculating damages, that the amount offered in settlement is approximately seventy-five percent of what Plaintiffs assert is beyond what could actually be recovered in this action, and that each plaintiff has approved his individual settlement, the Court finds that the amount offered to settle this action is fair and reasonable. The amount offered in settlement weighs in favor of approving the settlement agreement.

        2.    Stage of the Proceedings and Amount of Discovery Completed

The Court next considers the stage of the proceedings and the amount of discovery that has been completed. Where evidence is presented that a considerable amount of discovery has been conducted it weighs in favor of settlement "because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." Millan, 310 F.R.D. at 610 (quoting Adoma, 913 F.Supp.2d at 977). A settlement that occurs in an advanced stage of the proceedings indicates that the parties have carefully investigated the claims before resolving the action. Ontiveros v. Zamora, 303 F.R.D. 356, 370 (E.D. Cal. 2014). In considering the fairness of the settlement, the court's focus is on whether "the parties carefully investigated the claims before reaching a resolution." Ontiveros, 303 F.R.D. at 371.

Plaintiffs contend that they have engaged in sufficient formal and informal discovery to form an adequate determination of the merits of the action prior to reaching the proposed settlement. The scheduling order setting the discovery deadlines was filed on February 13, 2019. (ECF No. 24.) The discovery deadlines were extended on August 2, 2019 and November 11, 2019. (ECF Nos. 28, 30.) Defendant produced records related to the hours worked for each Plaintiff and the compensation paid as well as policies, the MOU and other legal authority governing compensation. The matter settled just prior to the close of the nonexpert discovery deadline and after the parties engaged in mediation.

1    Here, Plaintiffs contend that sufficient discovery was conducted to obtain a full

2    understanding of the damages that were at issue in this action prior to engaging in mediation.

3    Further, the parties fully explored that legal issues that are raised by the plaintiff's claims in this

4    action.  The Court finds that the stage of the proceedings and the amount of discovery that was

5    conducted weighs in favor of approving the settlement agreement.

6         3.    The Seriousness of the Litigation Risks Faced by the Parties

7    Plaintiffs argue that the settlement agreement provides almost complete recovery and

8    continued litigation would harm them by jeopardizing the relief that has been secured on their

9    behalf.  The parties dispute whether Defendant would be liable for the failure to include holiday-

10   in-lieu pay in the regular rate.  If Defendant was to prevail on the issue of liability, Plaintiffs

11   would not obtain any recovery in this action.  Further, a jury could find that any violation was

12   not willful or that the Defendant acted in good faith which would reduce any damages awarded.

13   As discussed above, the DOL's December 2019 final opinion and the amendment of the

14   statutory language to include an example stating that holiday in lieu pay is not to be included in

15   the regular rate creates a doubt as to whether Plaintiff's could prevail in this matter.  In light of

16   the risks and costs associated with continuing to litigate this matter, settlement of this action with

17   an immediate award to the collective members is preferable to continuing to litigate.

18   Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 255 (N.D. Cal. 2015).  This factor weighs

19   in favor of finding the settlement fair and reasonable.

20        4.    Scope of Release Provision in the Settlement Agreement

21   The court reviews the scope of any release provision in an FLSA settlement to ensure that

22   the collective action members are not pressured to forfeit claims, or waive rights, that are

23   unrelated to the litigation.  Selk, 159 F.Supp.3d at 1178.  "A FLSA release should not go beyond

24   the specific FLSA claims at issue in the lawsuit itself."  Seguin v. Cty. of Tulare, No. 1:16-CV-

25   01262-DAD-SAB, 2018 WL 1919823, at *4 (E.D. Cal. Apr. 24, 2018) (quoting Slezak v. City of

26   Palo Alto, No. 16-CV-03224-LHK, 2017 WL 2688224, at *4 (N.D. Cal. June 22, 2017)).  "The

27   concern is that an expansive release of claims would effectively allow employers to use

28   employee wages—wages that are guaranteed by statute—as a bargaining chip to extract valuable

concessions from employees." <u>Selk</u>, 159 F.Supp.3d at 1178

Here, Plaintiffs are releasing all claims, known or unknown, arising out of the matters raised in this action. (Settlement Agreement at ¶ 3.) This includes all FLSA claims made in this lawsuit for unpaid overtime, liquidated damages and attorney fees that have occurred up to and including the effective date of the settlement agreement. (<u>Id.</u>) The parties agree that the release covers only those FLSA violations that have occurred up to and including the effective date of the settlement agreement.

Here, the settlement agreement releases all FLSA claims that have been or could have been raised in this lawsuit up to the effective date of the settlement. The parties have agreed that only those claims that arise from or are attributable to Plaintiffs' FLSA claims in this action are being released. The Court finds that the scope of the released claims weighs in favor of finding the settlement to be fair and reasonable.

5. <u>Experience and Views of Counsel and Opinion of Participating Plaintiffs</u>

The court is to accord great weight to the recommendation of counsel because they are aware of the facts of the litigation and in a better position than the court to produce a settlement that fairly reflects the parties' expected outcome in the litigation. <u>DIRECTV</u>, 221 F.R.D. at 528.

Here, counsel for both the parties are experienced in litigating wage and hour claims and agree that the terms of the settlement agreement are fair and reasonable. Plaintiffs' counsel states that the settlement amount in within the maximum range that Plaintiffs could expect to recover were they to proceed to trial. Plaintiffs' counsel has over nineteen years of experience in litigating wage and hour actions, including FLSA actions. (Mastagni Decl. ¶ 2, ECF No. 38-2.) Given counsel's experience in this field, his assertion that the settlement is fair and reasonable supports final approval of the settlement. <u>Bellinghausen</u>, 306 F.R.D. at 257. Additionally, each plaintiff has been provided with a copy of the settlement agreement, had the opportunity to review it, and voluntarily agreed to the terms of the agreement.

This factor weighs in favor of finding the settlement agreement to be fair and reasonable.

6. <u>Risk of Collusion</u>

The parties assert that the settlement was reached through arms-length negotiations and

1   there has been no collusion or fraud.  In evaluating the settlement, the court must ensure that "the
2   agreement is not the product of fraud or overreaching by, or collusion between, the negotiating
3   parties."  Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 453 (E.D. Cal. 2013) (quoting
4   Officers for Justice, 688 F.2d at 625.  "[I]t is appropriate for the court to consider the procedure
5   by which the parties arrived at their settlement to determine whether the settlement is truly the
6   product of arm's length bargaining, rather than the product of collusion or fraud."  Millan, 310
7   F.R.D. at 613.

8         The parties engaged in a full day mediation with a professional mediator experienced in
9   FLSA collective action disputes.  (Youril Decl. ¶ 5, ECF No 38-1; Mastagni Decl. ¶¶ 7-9.)
10  While the matter did not settle that day, it did settle the following day with the assistance of the
11  mediator.  (Youril Decl. ¶ 5; Mastagni Decl. ¶ 9.)  The fact that the parties participated in
12  mediation prior to agreeing to a settlement in this action "tends to support the conclusion that the
13  settlement process was not collusive."  Millan, 310 F.R.D. at 613 (quoting Palacios v. Penny
14  Newman Grain, Inc., 2015 WL 4078135 (E.D. Cal. July 6, 2015)).

15        There are no indications that the settlement was the result of collusion or fraud and the
16  Court finds that the settlement was reached by arm's length bargaining.  This factor weighs in
17  favor of finding the settlement to be fair and reasonable.

18        7.     Consideration of Selk Factors Weigh in Favor of Settlement

19        Generally, approval of a settlement that is not clearly inadequate is "preferable to lengthy
20  and expensive litigation with uncertain results."  DIRECTV, 221 F.R.D. at 526, Millan, 310
21  F.R.D. at 611.  Here, all the factors weigh in favor of finding the settlement to be fair and
22  reasonable.  The Court is satisfied that the settlement's overall effect is to vindicate the purposes
23  of the FLSA and recommends that the settlement be found to be a fair and reasonable resolution
24  of a bona fide dispute.

25      **D.    Attorney Fees**

26        The Court must also approve the award of attorney fees in an FLSA action.  The parties
27  have agreed for Plaintiffs' counsel to receive $113,496.15 in attorney fees and costs.  This
28  amount includes $109,547.98 in attorney fees and $3,948.17 in costs.  The attorney fee award is

slightly over 31 percent of the settlement fund.  The FLSA provides for an award of attorney fees in a collective action.  29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").  Since the statute states that the court "shall" award a reasonable attorney's fee, "[t]he award of an attorney's fee is mandatory, even though the amount of the award is within the discretion of the court."  Gary v. Carbon Cycle Arizona LLC, 398 F.Supp.3d 468, 485 (D. Ariz. 2019) (quoting Houser v. Matson, 447 F.2d 860, 863 (9th Cir. 1971)).

"In 'common-fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or 'lodestar method.' "  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998).  The "lodestar" method is typically used where the benefit received by the class is primarily injunctive in nature, and therefore, monetary benefit is not easily calculated.  In re Bluetooth Headset Prod. Liab. Litig. ("In re Bluetooth"), 654 F.3d 935, 941 (9th Cir. 2011).

### 1.   Common Fund

Since the benefit to the class is easily calculated in a common fund case, courts may award a percentage of the common fund rather than engaging in a "lodestar" analysis to determine the reasonableness of the fee request.  In re Bluetooth, 654 F.3d at 942.  In the Ninth Circuit, courts typically calculate twenty-five percent of the common fund as the "benchmark" for a reasonable fee award providing adequate explanation in the record for any special circumstances that justify departure.  Id.  The usual range for common fund attorney fees are between twenty to thirty percent.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).  While the benchmark figure can adjust upward or downward to fit the individual circumstances of a case, the deviation must be accompanied by a reasonable explanation of why the benchmark is unreasonable under the circumstances.  Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 273 (9th Cir. 1989).

Here, the parties agreed to pay attorney fees in the amount of $109,547.98 in the

1   settlement agreement which is just over thirty-one percent of the common fund.[3]   Other courts

2   have approved awards in FLSA and class action settlements seeking a similar percentage of the

3   common fund.  See Gutierrez-Bejar v. SOS Int'l, LLC, No. LA-CV-1609000-JAK-JEM X, 2019

4   WL 5683901, at *10 (C.D. Cal. Nov. 1, 2019) (approving 29.33 percent of common fund);

5   Milburn v. PetSmart, Inc., No. 1:18-CV-00535-DAD-SKO, 2019 WL 1746056, at *11 (E.D. Cal.

6   Apr. 18, 2019) (approving 33.3 percent at preliminary approval); Beidleman v. City of Modesto,

7   No. 1:16-CV-01100-DAD-SKO, 2018 WL 1305713, at *6 (E.D. Cal. Mar. 13, 2018) (approving

8   30 percent of common fund where represents negative multiplier).

9          2.   Lodestar Cross Check

10          When applying the percentage of the common fund method in calculating attorney fees,

11   courts use the "lodestar" method as a crosscheck to determine the reasonableness of the fee

12   request.  See Vizcaino, 290 F.3d at 1050.  "This amount may be increased or decreased by a

13   multiplier that reflects any factors not subsumed within the calculation, such as 'the quality of

14   representation, the benefit obtained for the class, the complexity and novelty of the issues

15   presented, and the risk of nonpayment.' "   Adoma, 913 F.Supp.2d at 981 (quoting In re

16   Bluetooth, 654 F.3d at 942).

17          The "lodestar" approach calculates attorney fees by multiplying the number of hours

18   reasonably expended by a reasonable hourly rate.  Gonzalez v. City of Maywood, 729 F.3d 1196,

19   1202 (9th Cir. 2013); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).

20   Generally, the Court would conduct a more cursory review of the attorney fee request in

21   addressing the settlement of a class action.  However, since Plaintiffs request is well above the

22   Ninth Circuit benchmark, the Court will do a more detailed review in calculating the lodestar to

23   determine whether the amount requested is reasonable.

24          a.   **Hours Reasonably Expended**

25          Plaintiffs submitted billing records in support of the request for attorney fees.  The

26   records contain one redacted entry that appears to still be included in the total.  The Court finds

27   _____

[3] The joint memorandum states that that award of fees and costs is approximately thirty-one percent of the common
28   fund.  However, if both are included the award is 32.5 percent of the common fund.  The court assumes that this
representation was an error.

1  that the records attached demonstrate that 319.4 attorney hours and 167.44 paralegal/forensic
2  accountant hours were expended in this action for a total of 486.84 hours.

3      Upon review of the billing records in this instance, the Court does find that some of the
4  hours included for the paralegals are not reasonably incurred in this action because they are for
5  clerical tasks.  "Clerical or secretarial tasks should not be billed at a paralegal or lawyer's rate."
6  Isom v. JDA Software Inc., 225 F.Supp.3d 880, 889 (D. Ariz. 2016).  Plaintiffs billing includes
7  filing documents and administrative functions such as calendaring dates and setting up a
8  deposition which the Court finds to be clerical tasks that cannot be reimbursed at an attorney or
9  paralegal rate.  "When clerical tasks are billed at hourly rates, the court should reduce the hours
10 requested to account for the billing errors."  Nadarajah v. Holder, 569 F.3d 906, 921 (9th Cir.
11 2009) (affirming finding that filing, transcript, and document organization were clerical tasks
12 that should be subsumed in firm overhead rather than billed at paralegal rate).  Therefore, the
13 following hours are found to be clerical in nature.

14     The Court deducts .8 hours for Patrick R. Barbieri on September 12, 2018; .5 hours on
15 September 17, 2018; 1.8 hours on October 30, 2018; .7 hours on February 13, 2019; and 1 hour
16 on January 8, 2020.  The Court deducts 1 hour for Todd Thomas on January 15, 2020; and .2
17 hours on February 6, 2020.  The following are the hours found to be reasonably expended in this
18 action.

| Name | Position | Deductions | Total Hours |
|------|----------|------------|-------------|
| David E. Mastagni | Partner | | 97.7 |
| Isaac S. Stevens | Senior Associate | | 6.4 |
| Ian B. Sangster | Associate | | 176.2 |
| Ace T. Tate | Associate | | 29.5 |
| Tashayla D. Billington | Associate | | 9.6 |
| Toni Scannell | Forensic Accountant | | 137.48 |
| Patrick R. Barbieri | Paralegal | -4.8 | 12.7 |
| Todd Thomas | Paralegal | -1.2 | 11.26 |

1      **b.      Hourly Rate**

2          Plaintiffs state that the fees have been calculated using a rate of $125 to $150 per hour for

3   paralegals, $300 to $420 per hour for associates, and $490 to $695 per hour for senior counsel

4   and partners.  The loadstar amount is to be determined based upon the prevailing market rate in

5   the relevant community.  Blum v. Stenson, 465 U.S. 886, 896 (1984).  The "relevant legal

6   community" for the purposes of the lodestar calculation is generally the forum in which the

7   district court sits.  Gonzalez, 729 F.3d at 1205.  Here, although Plaintiff states that these rates

8   have been accepted by other courts in evaluating attorney fee requests.  But Plaintiffs have

9   presented no evidence of the prevailing rates in this district and Plaintiffs rates are higher than

10  what courts have authorized in the Fresno Division of the Eastern District of California.

11         In the Fresno Division of the Eastern District of California, attorneys with experience of

12  twenty or more years of experience are awarded $350.00 to $400.00 per hour.  See In re Taco

13  Bell Wage & Hour Actions, 222 F.Supp.3d 813, 839 (E.D. Cal. 2016); see also Garcia v. FCA

14  US LLC, No. 1:16-CV-0730-JLT, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (awarding

15  $400.00 per hour to attorney with approximately thirty years of experience, $300.00 to attorney

16  with fifteen years of experience; $250.00 to attorney with ten years of experience; and $225.00

17  to attorney with five years of experience; and $175.00 to attorney with less than five years of

18  experience); Mike Murphy's Enterprises, Inc. v. Fineline Indus., Inc., No. 1:18-CV-0488-AWI-

19  EPG, 2018 WL 1871412, at *3 (E.D. Cal. Apr. 19, 2018) (awarding attorneys with over twenty

20  years of experience $325.00 and $300.00 per hour, and attorney with 7 years of experience

21  $250.00 per hour); TBK Bank, SSB v. Singh, No. 1:17-CV-00868-LJO-BAM, 2018 WL

22  1064357, at *8 (E.D. Cal. Feb. 23, 2018), report and recommendation adopted, No. 1:17-CV-

23  00868-LJO-BAM, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018) (awarding attorneys with over

24  thirty-five years of experience $400.00 per hour, attorney with twenty years of experience

25  $350.00 per hour; and attorney with ten years of experience $300.00 per hour); Johnston Farms

26  v. Yusufov, No. 1:17-CV-00016-LJO-SKO, 2017 WL 6571527, at *11 (E.D. Cal. Dec. 26, 2017)

27  (awarding attorney with more than twenty years of experience $395.00 per hour); Phillips 66 Co.

28  v. California Pride, Inc., No. 1:16-CV-01102-LJO-SKO, 2017 WL 2875736, at *16 (E.D. Cal.

July 6, 2017), report and recommendation adopted, No. 1:16-CV-01102-LJO-SKO, 2017 WL 3382974 (E.D. Cal. Aug. 7, 2017) (awarding attorney with twenty-years of experience $400.00 per hour).  Even in the Sacramento Division, where rates are higher than in Fresno, the amount Plaintiffs have requested for partners is high.  See Smothers v. NorthStar Alarm Servs., LLC, No. 2:17-CV-00548-KJM-KJN, 2020 WL 1532058, at *1 (E.D. Cal. Mar. 31, 2020).

While Plaintiffs calculated paralegals using the rate of $125.00 to $150.00 per hour, in this district, "the reasonable rate of compensation for a paralegal would be between $75.00 to $150.00 per hour depending on experience."  Schmidt v. City of Modesto, No. 1:17-CV-01411-DAD-MJS, 2018 WL 6593362, at *6 (E.D. Cal. Dec. 14, 2018).  Plaintiffs have provided no information on the experience of the paralegals.

The Court has reviewed those declarations attached setting forth the experience of counsel.  No information has been provided for Isaac Stevens or Ace Tate and the Court bases the hourly rate on their position.  The Court finds that the following rates would be considered a reasonable hourly rate for the purpose of determining the lode star in this class action settlement.

| Name | Experience | Hourly Rate |
|---|---|---|
| David E. Mastagni | 19 years | $450 |
| Isaac S. Stevens | Senior Associate | $400 |
| Ian B. Sangster | 8 years | $325 |
| Ace T. Tate | Associate | $300 |
| Tashayla D. Billington | 5 years | $200 |
| Toni Scannell | Forensic Accountant | $125 |
| Patrick R. Barbieri | Paralegal | $75 |
| Todd Thomas | Paralegal | $75 |

/ / /

/ / /

/ / /

/ / /

1

**c.      Lodestar amount**

2

Based on the foregoing, the lodestar amount in this action is $133,542.00.

| Name | Hourly Rate | Total Hours | Total |
|------|------|------|------|
| David E. Mastagni | $450 | 97.7 | $43,965 |
| Isaac S. Stevens | $400 | 6.4 | $2,560 |
| Ian B. Sangster | $325 | 176.2 | $57,265 |
| Ace T. Tate | $300 | 29.5 | $8,850 |
| Tashayla D. Billington | $200 | 9.6 | $1,920 |
| Toni Scannell | $125 | 137.48 | $17,185 |
| Patrick R. Barbieri | $75 | 12.7 | $952.50 |
| Todd Thomas | $75 | 11.26 | $844.50 |

The Court finds that the amount requested is reasonable.  Although it is above the bench mark at approximately 31 percent of the common fund, it is less than the lode star amount which is considered a reasonable fee.  See Milburn, 2019 WL 5566313, at *10 (a negative multiplier supports the award of attorney fees).  Plaintiffs obtained significant relief for the plaintiffs in this action and are requesting less in attorney fees than the lode star rate which is presumptively a reasonable fee amount.  Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000).  The Court recommends that attorney fees of $109,547.98 be approved.

**E.      Costs**

The FLSA also provides for an award of costs.  29 U.S.C. § 216(b).  "To support an expense award, Plaintiffs should file an itemized list of expenses by category and the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable."  Flores v. TFI Int'l Inc., No. 12-CV-05790-JST, 2019 WL 1715180, at *11 (N.D. Cal. Apr. 17, 2019).  Counsel should provide receipts to support their claimed expenses.  Flores, 2019 WL 1715180, at *11.

/ / /

Plaintiffs have submitted the following list of costs that are sought in this matter.

| Item | Cost |
|---|---|
| Filing Fee | $400.00 |
| Service of Process | $65.00 |
| Mileage | $.55 |
| Costs for One Legal | $110.00 |
| Mediation Costs | $3,250.00 |

Although Plaintiffs have not submitted receipts to support the costs incurred in this action, the Court finds that the costs sought appear to be reasonable. However, Plaintiffs shall file a supplement providing receipts or other documentation for the costs sought in this action Accordingly, the Court recommends approving the award of costs subject to Plaintiffs submitting appropriate documentation to support the request for costs.

**V.**

**CONCLUSION AND RECOMMENDATIONS**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.      The settlement agreement be approved as fair and reasonable; and

2.      The joint motion for approval of the settlement be granted.

IT IS FURTHER ORDERED that within fourteen (14) days of the date of service of this order, Plaintiffs' shall submit documentation to support their request for costs.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th

1   Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

2

3   IT IS SO ORDERED.

4   Dated:   **May 7, 2020**
                                        UNITED STATES MAGISTRATE JUDGE